## William W. Reed, Exr. of Henry Cadwell, Deceased, Plff. in Err., *v.* Charles H. Orton et al., to Use of E. A. Bennett.

Evidence of a verbal notice to a party, of a pending suit, so that the party may intervene and defend, should state what was said, or the substance of what was said, so clearly that the jury may infer when and what notice was given.

The evidence in this case held insufficient to go to the jury to prove express notice of a particular suit pending and at a time when the party might have an opportunity to intervene and make defense.

The notes of evidence of the plaintiff on a former trial will be received to show that the testimony of the plaintiff in the second suit is not an afterthought.

(Decided October 4, 1886.)

Error to the Common Pleas of Erie County to review a judgment on a verdict for plaintiffs in an action of covenant. Reversed.

C. H. Orton, G. W. Haverstick, E. A. Bennett, and Henry Cadwell formed a partnership September 1, 1855. On June 1, 1857, the partnership was dissolved. Cadwell took the assets and agreed in writing to settle, adjust, and pay off the indebtedness of the firm and save, indemnify and keep harmless the other members from all suits, etc., arising out of the said copartnership. The firm was at the time indebted to Barnes, Lyman, &

Company, who, on January 6, 1858, recovered judgment against Cadwell, Orton, & Haverstick in the circuit court of the United States for the district of Wisconsin; there was no service on Bennett in that suit.

On February 13, 1861, during Cadwell's lifetime, suit was commenced by Barnes, Lyman, & Company against Bennett, in the Erie common pleas, on the same debt, and judgment was taken against him March 30, 1861; no notice of this suit was given to Cadwell. On July 24, 1868, a sci. fa. to revive this judgment against Bennett was issued, and judgment entered against him, October 29, 1868, and a writ of fi. fa. issued, which was stayed upon Bennett giving his note to J. W. Wetmore, Esq., and an assignment of Cadwell's agreement; and Wetmore, as attorney for Barnes, Lyman, & Company, receipted for the debt and interest. Bennett never paid the note given to Wetmore, nor any money on it nor upon the said judgment.

On December 3, 1860, Barnes, Lyman, & Company took from Cadwell his judgment bond for the amount then due on their judgment recovered in the United States circuit court in Wisconsin, and entered judgment thereon in the common pleas of Erie county; and on October 31, 1864, sold and assigned this judgment to W. W. Lyon, reserving all their rights against the other members of the firm of Haverstick, Bennett & Company, and also reserving all collateral securities held by them for the payment of the debt for which the judgment was obtained. On May 15, 1866, Lyon received and entered satisfaction on the record of said judgment. Cadwell died in 1868, and Lyon died in 1869.

After the death of Cadwell, a sci. fa. was issued by Barnes, Lyman, & Company on their judgment against Bennett, who permitted judgment to be taken without giving notice, as defendant alleged, to Reed, executor of Cadwell, that such sci. fa. had been issued; and Bennett, after judgment had been recovered against him in the sci. fa., assigned his contract of indemnity with Caldwell, to Barnes, Lyman, & Company, who brought suit thereon against Reed, executor of Cadwell. The latter defended on the ground that he had had no notice of the pending revival of the Bennett judgment. Plaintiffs, however, alleged that such notice had been given, and in evidence thereof proved certain conversations between Bennett and Reed, and between Bennett and Mr. Marshall (who was attorney for Cadwell's estate), as quoted in the opinion of the supreme court.

At the trial, before GALBRAITH, P. J., the court admitted in evidence, under objection by defendant, the record of the judgment against Bennett, entered March 30, 1861, and of the judgment upon the sci. fa. thereon. First and second assignments of error.

The court admitted under objection the testimony of Hon. John P. Vincent, who presided at a former trial of the same cause, as follows:

*Q.* From your notes of testimony taken at the first trial, please inform us what Mr. Bennett testified to as to the notice to W. W. Reed.

Objected to, that they are asking him to swear from his notes of testimony; that they are not calling him to answer from his recollection and knowledge, but from his notes of testimony.

By the Court: It is refreshing his recollection from his notes of testimony; that is the way it should be put.

*A.* The notes of testimony bring nothing back to me or as to what took place before me, except what is in the notes; independent of the notes, I haven't any recollection. I could not swear positively without them that he was examined as a witness, although the best of my recollection is that he was.

By the Court: I think it is competent.

*Q.* State what he swore to about the notice.

*A.* According to my notes, he swore that before the judgment on the sci. fa. was taken he notified Mr. Reed of the suit.

*Q.* Was that in direct or cross-examination?

*A.* It appears to have been in cross-examination.

The defendant presented, *inter alia,* the following point:
There is no evidence of a legal notice having been served on W. W. Reed, executor of Henry Cadwell, deceased, to defend the suit of Barnes, Lyman, & Company v. E. A. Bennett, in 1868.

*Ans.* This is a question for the jury. There is some evidence, but whether enough to satisfy the mind of the jury that W. W. Reed had notice of the scire facias is a question for the jury. Fourth assignment of error.

*F. F. Marshall* and *John P. Vincent,* for plaintiff in error.— A notice in legal proceedings means a written notice. Gilbert v. Columbia Turnp. Co. 3 Johns. Cas. 108; *Re* Cooper, 15 Johns. 533.

To be effective, "the notice should be unequivocal, certain, and explicit. A knowledge of the action and a notice to attend the trial will not do, unless it is attended with express notice that he will be required to defend the title." Paul v. Witman, 3 Watts & S. 410.

When this case came here last, this court held:

"In making out their case it was incumbent on the plaintiffs below to prove that defendant was duly notified to defend the suit brought by Lyman, Barnes & Company against Bennett, the beneficial plaintiff in this case, . . . 1868, of the court of common pleas of Erie county." Reed v. Orton, 105 Pa. 294.

All the evidence on this point was that of Bennett himself.

The testimony of Judge Vincent was in fact simply an endeavor to make evidence of the notes taken on a former trial of a witness, who not only was present in full life, of ordinary health and memory, but one who stood as plaintiff on the stand and had himself testified. This is going one step further than was attempted in the case of Velott v. Lewis, 102 Pa. 326; Reed v. Orton, 105 Pa. 294.

*J. W. Wetmore* and *L. S. Norton,* for defendants in error.— The assignment of the judgment to Lyon reserved all rights against the other members, and the act of assembly likewise prevents their discharge by such assignment and satisfaction. Brightly, Purdon's Digest, 1299, § 3.

There was no error in permitting Judge Vincent to refresh his memory from his notes. Farmers' & M. Bank v. Boraef, 1 Rawle, 152, 154.

When an attempt is made to discredit the statement of a witness, evidence is admissible to show that the witness made said statement at another time to other parties, to show that the statement is not a fabrication of recent date, and as bearing on the witness's credibility. Zell v. Com. 94 Pa. 258.

If the notice does not appear on the record, the question of conclusiveness of the judgment will depend upon the belief of the jury as to the reception of the notice. Rawle, Covenants for Title, p. 255; Collingwood v. Irwin, 3 Watts, 306.

Where there is a spark of evidence as to notice, the question of fact must be submitted to the jury as the legitimate triers of it. Bank of Pittsburgh v. Whitehead, 10 Watts, 397–402, 36 Am. Dec. 186.

OPINION BY MR. JUSTICE GREEN:

It seems to us the evidence of notice by Bennett to Reed, as executor of Cadwell, of the pending suit by Barnes, Lyman & Company against Bennett was insufficient. If the notice was not given until after judgment was obtained against Bennett, it was unavailing, as no opportunity to intervene and make defense could be then acquired. The only witness to prove the notice was Bennett himself. He was sworn and testified on his own behalf, and the best he could say was far short of an actual notice of a pending suit given before judgment was obtained. The whole of his testimony on his examination in chief is contained in the following:

*Q.* Now, before this scire facias, that was issued July 24, 1868, and the judgment against you was entered three months and five days thereafter, now, between those two dates what, if any, conversation did you have with W. W. Reed, the executor of Henry Cadwell, as to the pendency of this action against you?

*A.* I spoke to him about it and he referred me to Mr. Marshall. I don't know all that was said.

*Q.* If there was more than one such conversation occurred, about how often, according to your recollection, did you have any conversation with him with regard to it—with Mr. Reed?

*A.* I couldn's say. It was a good while ago. I couldn't say where we were, or how many there was, but we often spoke of it.

*Q.* Can you give the substance of those conversations?

*A.* The substance was I wanted him to look after it and protect me, and he referred to the old gentleman, Mr. Marshall.

It will be perceived at once that the testimony was extremely vague and indefinite, and evidence upon such a subject ought not to be either vague or indefinite. He says: "I spoke to him about it," but he does not say what he spoke. Bennett may *infer* from what he said that he gave express information of a fact that a suit had been brought against him by Barnes, Lyman & Company, for a debt for which Reed's testator was liable; but he has no right to infer,—that is for the jury when they know what was said. But what was said is not stated, and therefore we cannot certainly know whether there was proper ground for an inference of the particular notice which the occasion required, by the jury.

Nor is this deficiency supplied by the further statement: "The substance was I wanted him to look after it and protect me."

Look after what? Protect him from what? The witness does not say, and the jury is asked to infer the whole matter of the conversation and its meaning, when the party, who is his own witness, is unable or unwilling to tell it himself. The necessity for certainty is greatly increased by the fact that the defendant was only an executor of the real defendant, and is not presumed to know anything about the matter in question. He should therefore be precisely informed, and the very matter of the information should be stated so that the jury and the court might judge of its meaning and effect.

In addition to the foregoing, the witness, on cross examination, was quite unable to say whether the conversation, such as it was, occurred before or after judgment was obtained. Thus:

*Q.* You don't recollect now of having testified before that you had conversation with Mr. Reed about this action now in suit?

*A.* I don't know whether about this one. I had several in regard to different suits, and he always referred me to Mr. Marshall.

*Q.* Do you mean to say now that you had these conversations with him before judgment was obtained against you in that case?

*A.* It was just before that conversation with Mr. Marshall; whether he had obtained the judgment then or not I don't recollect.

*Q.* Wasn't it when they were trying to open the judgment you had this conversation?

*A.* No, sir, I think not. Mr. Marshall says: "Let him crack away; he won't make anything out of it."

*Q.* That was after the judgment was had against you?

*A.* I couldn't say whether it was pending or whether a judgment had been obtained.

Further on, having said: "Mr. Reed spoke to me and I to him," he was asked:

*Q.* You can't say whether that was before or after the judgment?

*A.* Which judgment?

*Q.* The judgment of Barnes, Lyman & Company, against you, on which the execution was issued against you alone on the scire facias in 1868; wasn't all that talk with Mr. Reed about that after that judgment was obtained and after they were talking about having it opened?

*A.* I couldn't say.

We are very clear that, in view of this aspect of the testimony, it was insufficient to go to the jury as evidence of express notice of a particular suit pending, and at a time when the party notified might have an opportunity to intervene and make defense. The evidence of Judge Vincent, as to what Bennett testified to on a former trial, was neither offered nor received as evidence of notice, but only to disprove a possible theory of the defense,— that the evidence was an afterthought, occurring subsequently to the previous trial. If it had been offered as proof of the fact of notice, by proving that Bennett once swore to it positively, it would have been clearly incompetent, as Bennett was himself alive and an actual witness in the cause. He could not help out his own evidence by proving that he testified to the fact of notice on a previous trial. We sustain the fourth assignment, but not the others.

Judgment reversed.